## MOHON v. STREETY. (No. 6770.)*

(Court of Civil Appeals of Texas. San Antonio. May 31, 1922. Rehearing Denied June 28, 1922.)

1. **Joint-stock companies and business trusts ⊂⊃8—Allegations as to fraud in sale of stock held sufficient.**

In an action by buyer of stock against the seller for rescission for fraud, allegations that defendant had by false and fraudulent representations induced plaintiff to purchase certain shares of stock at a specified price, which defendant represented to be a marketable value, though it was worthless, and that plaintiff was thereby defrauded out of the money paid for the stock, was sufficient to base an action on account of fraud.

2. **Joint-stock companies and business trusts ⊂⊃8—In action for fraud in sale of stock, evidence that officers of the association referred buyers of stock other than plaintiff to defendant inadmissible.**

In an action by a buyer of stock against the seller for rescission for fraud, testimony that other officers of the association of which defendant was an officer had referred other buyers to defendant for his opinion of the value of the stock was properly excluded, since the action was against defendant personally, and not against the association and its officers.

3. **Evidence ⊂⊃314(1)—Hearsay testimony not admissible to prove fraud.**

Hearsay evidence with which a party defendant in an action for fraud is not connected may not be introduced.

4. **Joint-stock companies and business trusts ⊂⊃8—Seller of stock held not liable to buyer for fraud where price paid.**

In an action by a buyer of stock against a seller for rescission for fraud, in which the jury found on special issues that defendant

⊂⊃For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error dismissed for want of jurisdiction October 25, 1922.

made certain statements as to the market value of the stock, and that plaintiff would have purchased regardless of the statements, and that the stock was worth the sum which plaintiff paid for it, the seller was not liable.

**5. Trial ⬅➡315—Concessions of jurors to other jurors to arrive at verdict held not reversible error.**

In an action by a buyer of stock against a seller for fraud, in which three special issues were submitted to the jury, concessions by certain jurors as to their ballots on certain of the issues to get other jurors to agree with them, in view of the fact that the answers to all of the issues were finally approved by all the jurors as their verdict, did not constitute reversible error.

Appeal from District Court, Comanche County; J. R. McClellan, Judge.

Action by J. A. Mohon against W. C. Streety. From judgment for defendant, plaintiff appeals. Affirmed.

Smith & Woodruff, of Comanche, for appellant.

Goodson & Nabors, of Comanche, and Hampton, Harris & Hampton, of De Leon, for appellee.

COBBS, J. This suit, originally, was brought by appellant against appellee, B. J. Pittman, Arthur Kelsey, W. H. Robbins, and N. E. Smith, but by an amended petition upon which the case was tried all the named defendants, except appellee, were dismissed from the suit, and the same was prosecuted alone against appellant.

[1] The suit was based upon allegations of fraud to the effect that all the defendants entered into an ,association under the guise and form of a purported declaration of trust, for the express purpose of refining .crude oil and for dealing in other matters, etc., and in furtherance of a common purpose and design to issue shares of its stock at the par value of $1, each, aggregating $600,000, negotiable and purporting to vest the control and management of the enterprise in the trustees named in the declaration of trust. By false and fraudulent representations the parties, and especially appellee, induced appellant to purchase 10,000 shares of the stock at the alleged price of $10,000. Through appellee the stock was represented as having a marketable value as represented, though it was worthless, in fact, and appellant was thereby defrauded out of his said money paid for said stock. Appellant sought a rescission and cancellation of the contract and tendered back the stock, and in the alternative that on account of the alleged fraud which induced the appellant to purchase the stock, if no rescission for any reason can be had, then to recover the $10,000, with interest, so paid, costs of suit, and for all relief, special or general, to

which, under the facts he would be entitled. Appellee filed demurrers and answered. The petition, on its face, stated a sufficient cause of action. The allegations in reference to the fraud and fraudulent representations were full and comprehensive enough.

The case was tried by the court with a jury, and upon their answer, the court entered a judgment in favor of appellee that appellants recover nothing whatever by reason of the suit, and that all costs in the case are adjudged against appellant.

The court only submitted three issues for the jury to find, to wit:

"Special issue No. 1: Did the defendant approach the plaintiff in the town of De Leon on or about the 25th day of April, A. D. 1919, and, among other things, state and represent to the plaintiff in substance and effect, that he, the defendant, had himself invested $45,000 in the stock of the De Leon Refining Company, and had borrowed the money, and had given his note to purchase said stock? You will answer 'Yes' or 'No' as you may find and determine from the facts before you. If your answer to the foregoing question or issue is 'No,' you need not answer the following issues, but if your answer to the foregoing issue is 'Yes,' then you will make answer to the following issues:

"Special issue No. 2: If you have answered that he did make such statements as inquired about in the foregoing issue—that is, if your answer to the foregoing question was 'Yes'—then did the plaintiff believe the statements so made by the defendant to be true and rely and act thereon in the purchase of the De Leon Refining Company stock to the amount of $10,000? Your answer to this question must be 'Yes' or 'No' as you may find from the facts.

"Special issue No. 3: If you have answered that the defendant did make such statements as inquired about in issue No. 1—that is, if your answer to issue No. 1 was 'Yes'—then would the plaintiff have purchased said stock but for such statement and representations? Your answer must be 'Yes' or 'No' as you may find the facts to be."

To which questions the jury answered:

"To the first special issue: Answer: Yes. "To the second special issue: Answer: No. "To the third special issue: Answer: Yes."

At the request of appellee, the court gave the following additional charge:

"Find from the evidence what the actual fair market value of the 10,000 shares of the capital stock purchased by J. A. Mohon in the De Leon Refining Company was at De Leon, Comanche county, Tex., on April 25, 1919."

To which the jury answered, "One dollar per share."

[2] The first assignment complains that the court erred in excluding the testimony of the witness W. H. Bridges, who would have testified he sold stock for the De Leon Refining Company and was instructed by Mr. January and Mr. Smith (other trustees and

officers in said company) in substance to say, when offering to sell the stock of the company, that W. C. Streety, appellee, had taken $45,000, and he was going to be trustee and treasurer, and that a local man would handle their money and have charge of all the books; frequently referred men to Mr. Streety for verification of the statements and carried some men to him, some of whom came back and bought stock from witness; that Mr. Streety advised to buy the stock as a safe business and had put money in it himself; that the testimony was material on the allegations of fraud and fraudulent representations made to appellant, which induced appellant to make the purchase of the stock, and, in support of the allegations, that, appellee, in the sale of the stock, was acting in conjunction with Robbins, Smith, January, and others in pursuance of a common purpose, design, and understanding between them, and under the guise of a declaration of trust for the purpose of selling the stock certificates in question, and that the defendant and his associates were parties and agents for each other, all associated together as partners engaged in a common purpose in selling stock certificates in question.

We do not see wherein any material error was committed by this ruling. The reasons given by the court for its ruling are exceptionally clear and correct. It is indorsed on the bill. It is not a suit against the association and all the officers and members thereof as partners engaged in a common purpose to swindle appellant, but solely against appellee on his alleged fraud. It is not pretended that it seeks to subject the assets of the association, if any, to his claim, nor for separate judgment against it or to secure a personal judgment against each member thereof. In some respects the appellant in the original petition had some such idea in framing the petition, but by amending the same, all the other defendants were eliminated, and the suit proceeded alone against appellee on his alleged tort, charging him with fraud upon his alleged false statements and representations alleged to have been made to appellant to induce him to purchase the stock in said joint-stock association, and is not a suit against that voluntary unincorporated association, of which he may have been a trustee, partner, or stockholder, nor that his liability, if any, was based upon allegations of fraud, and not the liability of a partner or partnership obligation, but as an individual liability for such alleged fraud, and in no way seeking to recover upon any liability of him as a partner for a partnership obligation. While as to what was said by appellee to appellant to induce the purchase became a controverted issue of fact, there is no testimony to show that the alleged statements made by January, Smith, and Robbins to Bridges were made in the presence of, known to, or authorized by appellee. It is not shown that appellee authorized the same, knew of them, or ratified them. According to appellant's own contention, they were in no sense the agents of appellee, though they may have been interested, as stockholders, in the success of the association. It cannot be seen how the testimony of the witness relative to statements of third persons out of the presence of or without the hearing of appellee can bind him. There is no evidence whatever that such claimed representations of fraud, if they constituted fraud, which is very much doubted, were made by any authority from appellee.

[3] While in the investigation of a case of fraud large latitude is allowed, it will not go to the extent of permitting the introduction of hearsay testimony with which appellee is not connected. Orient Land Co. v. Reeder (Tex. Civ. App.) 173 S. W. 940; Ruling Case Law, vol. 10, §§ 133, 134, et seq.; 20 Cyc. p. 185B; 12 R. C. L. p. 399, § 147; Chilson v. Cheim (Tex. Civ. App.) 171 S. W. 1074.

The association was to secure its capital stock in the first instance by the trustees executing their notes for $45,000 and attach their stock certificates as collateral to secure the operating capital and to make improvements on the plant. There was sufficient notice on the face of the terms of the written agreement, providing for the sale of its stock and accumulating money for its capital stock, to say nothing of the certificate of stock purchased by him, to advise him of the powers of the trustees in respect to the sale of the stock and to what extent they could go in making declarations that could or would bind the other members of the association as such, or in their individual capacity. It has been held that such an association constitutes a partnership, and ordinarily the stockholders would be required to look to the partnership to be reimbursed for any legitimate outlay, just as in any other partnership.

Treating this suit as one based purely upon an action to recover on fraud and deceit, because of the alleged tort of appellant, the sole and material question is to determine whether or not appellee's alleged fraud alone did induce appellant's purchase. This issue the appellant has sharply drawn and narrowed down. As seen by the authorities in such cases, only those are liable who are shown to be the parties to the fraud. Appellee cannot be affected by false representations neither made by him, nor made with his knowledge. He cannot be bound by the acts of others in which he did not participate. To authorize a recovery on the alleged ground of fraud on the part of appellee, it must be proven that the fraud was committed by appellee, or with his knowledge, or by his procurement, or with his authority and consent.

The jury found that the alleged representations were made by appellee to appellant that he "had himself invested $45,000 in the stock of the De Leon Refining Company, and had borrowed the money, and had given his note to purchase the stock." The jury further found that the appellant did not believe the statements so made to be true and did not act thereon in the purchase of the De Leon Refining Company Stock to the amount of $10,000.

The jury further found that appellant would have purchased said stock without such statement and representations.

The jury further found in reply to special issue No. 1, requested by appellee and given by the court, the actual fair market value of the 10,000 shares of the capital stock purchased by J. A. Mohon (appellant) in the De Leon Refining Company, made at De Leon, Comanche county, Tex., on April 25, 1919, was $1 per share.

The appellant requested the submission of no special issues, but contented himself with attacking the issues submitted by the court and the answers of the jury to Nos. 2 and 3 given by the court.

This is a fact case, and must be disposed of by the findings of the jury, unless some error of law has been committed by the court in the trial of the case properly reserved.

[4] The jury found that the statements were made as complained of by appellant, but that it did not affect his purchase, because he would have purchased anyway; and they further found the stock was worth precisely the sum he paid for it, to wit, $1 per share. These findings presented the issues in the case, and the findings of the jury are entirely supported by evidence, and no appellate court would be justified in setting aside their verdict so as to grant a new trial, unless there was no evidence to support it, and here there was ample. Take this case most strongly against appellee, and suppose it be admitted, for the sake of argument, that appellee made those alleged statements, which the jury found were made, and against which appellant filed no complaint, the jury found appellant did not believe or rely on them, and, notwithstanding such claimed false statements and independently thereof, he would have and did purchase the stock, and the market value was as found by the jury to be $1 per share, which was the purchase price paid by appellant therefor; there can be no liability in such a case. Any statement as to the future outcome of said association's business was obviously an opinion, and not actionable.

The facts in this case in support of the jury findings disclosed by the testimony, when appellant was approached to purchase the stock, he declared he would investigate further, and, after discussing the refinery business with Mr. Sinclair, an oil man, he purchased the stock. It is a case probably of a potential desire to "get rich quick," overcome by oil excitement that innoculated his blood. Such excitement, no doubt, often drives men of clear judgment entirely off their feet, for the jury found he would have purchased the stock anyway, and found it was worth what he paid for it. Oil booms are dangerous to the peace of mind of the average citizen. Some grow quickly rich from "playing the game," while others are correspondingly impoverished and made to suffer. Perhaps it fires the blood more intensely than fever. It promises wealth and power beyond the human conception. It promises splendor at home and finished education for the children, travel, enjoyment in the social world, tours to noted and fashionable watering places, the resorts of the wealthy classes, and trips galore across the deep blue and briny seas to noted cities and resorts in the other world. But, when oil fields collapse, and other associations also formed for the same purpose fail, how prone one is to charge the other fellow with fraud, but it does not seem that appellant was a loser in the general result. From a farmer he became a wealthy oil operator. He sold his lease for $10,000 an acre and his royalty for $50,000; and became a stockholder and director in the First National Bank of De Leon and made other various successful investments. The jury had such facts before them in considering whether so successful a business man was one likely to rely upon and be deceived by the claimed representation of appellee, or one likely to rely upon the same in making the purchase of oil stock, without further investigation. The jury here found against the claim of fraud, and we are not at liberty to set their verdict aside.

For the reasons given, assignments Nos. 1, 2, 3, 4, and 5 are overruled.

[5] The sixth assignment of error complains that the court should have granted a new trial, because the findings of the jury, as returned into court, were improperly arrived at by taking a ballot, as to the first special issue, upon which they were divided, five or six of the jurors voting to answer the first special issue, as to whether the representations were made by the defendant to the plaintiff, in the affirmative, the same number voting to answer in the negative, then further divided as to the form of the answer to the second special question, that, after arriving at the said agreement, proceeded to write their answers to the first special issue in the affirmative, the second special issue in the negative, and the third special issue in the affirmative, and so returned their answer into court.

In support of the motion and after the jury were dismissed, the appellant, by permission of the trial court, introduced the testimony of two of the jurors, who were required to testify in detail the manner in

which this verdict was arrived at. The testimony is presented here by a separate statement of facts, duly approved in the manner required by law in preserving the testimony by original statement of facts.

It will be well to observe and note that no complaint is made that there was any improper conduct on the part of the jury in finding that the value of the stock at the time of purchase, or rather April 20, 1919, was $1 per share. That finding is not included in the attack on the others. It was, however, shown by the jury themselves that they adopted a plan or method whereby they were enabled to reach a verdict, and, after they concluded how they would each separately vote, then voted and expressed themselves as being entirely satisfied with the result, and voted that that would be their verdict, and thereupon returned their verdict so ascertained and written into open court as the unquestionable verdict of the jury. Only two jurors testified. They were House and Dillard, and there is nothing to indicate corruption, improper motive, or impropriety in the manner of reaching it. The method used by the jurors was mainly in respect to issues Nos. 1 and 2, as they were practically agreed upon issue No. 3.

It is very apparent that concessions were made by some of the jurors favorable to appellee, and these concessions were made in order to get an affirmative answer of "Yes" to No. 1, favorable to appellant, and did not hold out with much tenacity in answering No. 2. They were practically unanimous in their answer to No. 3.

Now, looking to the testimony of these two jurors alone, none other being introduced, their minds met fully as to special issue No. 1, asked by appellee and given, as likewise their answers were practically unanimous to No. 3, and such answers of themselves would be sufficient to support the judgment. There is no conceivable injury done appellant by the methods used and adopted in reaching a verdict that the jury all finally subscribed to as their own. It was not a verdict arrived at by any division such as is spoken of in Railway Co. v. Jones (Tex. Civ. App.) 175 S. W. 491. Such a method was not and could not be applied here so as to arrive at a verdict by any quotient method.

In cases where the jury are directed to find the facts upon several issues, it is very manifest that out of 12 men there will necessarily be a divergence of opinion that must be reconciled and made harmonious, which, of necessity, must require mutual concessions. That is one of the reasons that so much faith must be given to their action. It is reasonable to suppose, after 12 men have heard all the evidence and argument of counsel and charge of the court, that they will by discussion and by honest endeavor be able to reach the truth from so many divergent views and angles, and eventually reach a fairly satisfactory conclusion. Of course, such a verdict must not be reached by the surrender of their conscience, because they are as much under oath as the trial judge, without whose concurrence there can be no verdict and judgment. We agree with appellant that no better rule can be stated anywhere than there was by Mr. Justice Williams in Railway v. Johnson, 99 Tex. 342, 90 S. W. 165. Among other things, he said:

"What prepossessions or inclinations of mind a juror may surrender consistently with an intelligent and conscientious discharge of this duty is for him alone to determine, for the reason that it is his judgment the law seeks to obtain, and he should be left to form it uninfluenced by advice from the court."

In this case it appears that the jury balloted frequently upon this issue No. 1 and finally answered it most favorably to appellant, after making mutual concessions arrived at a mutual verdict and returned it. The court asked each juror if that was their verdict, and each juror answered it was.

There was nothing to show improper conduct on their part in arriving at their verdict. While the method used is not to be commended by any means, yet there is no reason to set it aside.

We find no reversible error assigned, and they are all overruled, and the judgment of the court is affirmed.